UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDAL A. NOTTINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:20 CV 14 CDP |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Randal Nottingham brings this action under 42 U.S.C. § 405(g)

seeking judicial review of the Commissioner's denial of his application for disability

insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401,

*et seq*., and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381

*et seq*.  Because the Commissioner's final decision is supported by substantial

evidence on the record as a whole, the decision is affirmed.

## I.      Procedural History

Nottingham filed his applications for DIB and SSI on November 20, 2017

(Tr. 202).  In his applications, Nottingham alleged that be became disabled as of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

October 21, 2017 due to chronic lower back pain, tendonitis of the left elbow, bilateral hearing loss, learning disabilities, and depression.  (Tr. 249).  Nottingham's claims were denied at the initial claims level on February 5, 2018.  Nottingham timely filed a written request for a hearing on March 29, 2018, and a hearing before an Administrative Law Judge (ALJ) was held on March 29, 2018, at which Nottingham and a vocational expert testified.  The ALJ issued an opinion finding Nottingham not disabled on June 6, 2019, and on January 16, 2020, the Appeals Council denied Nottingham's request for review.  Nottingham thereafter filed his complaint in this Court on March 16, 2020.  Nottingham has exhausted his administrative remedies, and the ALJ's decision is properly reviewable as the final decision of the Commissioner.

## II.    Legal Standard

To be eligible for benefits under the Social Security Act, Nottingham must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Social Security Act defines 'disability' as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not

only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005).  At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments.  At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff*, 421 F.3d at 790 (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step

Five and determines whether the claimant, with his RFC and other vocational factors, can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step Four of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Id.*  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).  To that end, I must consider evidence that supports the Commissioner's decision, as well as any evidence that fairly detracts from the decision.  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  If, after reviewing the entire record, it

is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Id.* I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). This statutory standard of review defers to the presiding ALJ, "who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

### III.   Evidence Before the ALJ

With regard to Nottingham's medical records, testimony before the ALJ, and the other evidence of record, the Court adopts Nottingham's Statement of Facts, as supplemented by the Commissioner's Response to Nottingham's Statement of Facts and Statement of Additional Facts. ECF 12-1, 13-1, 13-2. Upon a thorough review of the record evidence, the Court finds that the adopted facts are accurate and comprehensive as to the issues relevant to this appeal. Specific facts will be discussed in the following Discussion section as needed.

### IV.   Discussion

A. The ALJ's Decision

The ALJ determined that Nottingham met the insured status requirements of the Social Security Act through September 30, 2019, and that he had not engaged in substantial gainful activity since October 21, 2017, the alleged onset date of disability. (Tr. 13). At Step Two, the ALJ determined that Nottingham had severe

impairments of spinal degenerative disc disease and left elbow lateral epicondylitis. The ALJ additionally found that Nottingham had a history of acute gastritis and wrist sprain, but that neither impairment caused more than a minimal effect on his ability to work.[2]  At Step Three, the ALJ determined that Nottingham did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At Step Four, the ALJ determined that Nottingham had the RFC to perform less than a full range of light work, and specifically:

> [Nottingham] is capable of lifting 20 pounds occasionally and 10 pounds frequently and carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing for six hours, and walking for six hours during an eight-hour workday.  He is able to push/pull as much as can lift/carry.  The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; stoop frequently, crouch frequently, and crawl frequently.  The claimant can never work at unprotected heights or with moving mechanical parts.

(Tr. 14.)  Based on this RFC, and in consideration of the testimony of a vocational expert, the ALJ determined that Nottingham was able to perform his past relevant work as a hand packer, as actually performed by him at the light level.  (Tr. 17.)  The ALJ additionally determined that Nottingham could perform several other light jobs in the national economy, including

---

[2] The ALJ further found that there was no record evidence to support Nottingham's allegation of bilateral hearing loss or disability due to intellectual disorder.

representative occupations like furniture rental clerk, sales attendant, elect

access assembler, and four other sedentary-level occupations.  (Tr. 18-19.)

Accordingly, the ALJ concluded that Nottingham was not disabled as defined

by the Social Security Act.  (Tr. 19.)

      B. <u>Summary of the Issues</u>

      Nottingham raises two issues on appeal.  First, Nottingham contends

that the ALJ erred in failing to give controlling weight to the opinion of his

treating physician assistant (PA), Eric Miller, and by improperly substituting

her own medical findings and inferences from the record.  Second,

Nottingham argues that the ALJ erred in assessing his RFC because she failed

to adequately develop the record.

      *i.   Medical Opinion Evidence*

      A "medical opinion" is a statement from a medical source about what

an individual can still do despite his impairments, and includes limitations or

restrictions about the ability to perform physical, mental, sensory, and/or

environmental demands of work.  20 C.F.R. §§ 404.1513(a)(2),

416.913(a)(2).  Under the revised Social Security regulations, the agency

"[w]ill not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from [the claimant's] medical sources."  20 C.F.R. §§

404.1520c(a), 416.920c(b)(2).[3]  Instead, the ALJ must assess the

persuasiveness of all medical opinions and prior administrative medical

findings using a number of factors, including 1) the supportability of the

opinion with objective medical evidence and explanations; 2) the consistency

of the opinion with evidence from other medical and nonmedical sources; 3)

the relationship of the provider to the claimant, including the length, nature

and frequency of treatment; 4) the specialization of the provider; and 5) other

factors, including the source's familiarity with the Social Security guidelines.

*See* 20 C.F.R. § 404.1520c.  The ALJ must explain how they considered the

factors of supportability and consistency in their decisions but are not

statutorily required to discuss the other factors.  20 C.F.R. § 404.1520c(b)(2).

In March 2019, PA Miller completed a medical source statement form (MSS)

on Nottingham's behalf and opined that since October 17, 2017, Nottingham had the

ability to lift and/or carry 10 pounds occasionally and less than 10 pounds

frequently; stand 20 minutes at one time and walk 10 minutes at one time for less

than 2 hours total in an 8-hour workday; sit for 20 minutes at a time for a total of 2

hours per workday; and required the ability to shift positions at will and walk around

10-15 times per day (Tr. 527, 530).  He also opined that Nottingham could

---

[3] The new regulations are applicable to Nottingham's claim because he filed his appeal after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  To the extent Nottingham argues that the ALJ erred as a matter of law by failing to assign controlling weight to PA Miller's opinion, she was not required to do so.  *See, e.g. Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019).

occasionally twist, stoop, and climb stairs and ladders, and never crouch; frequently

reach, handle, finger, and feel; and occasionally push/pull with the upper and lower

extremities (Tr. 528).  PA Miller further indicated that Nottingham would be absent

more than four days per month, would be off task 25 percent or more of the

workday, and would require 2-3 unscheduled rest breaks of 20-30 minutes each per

day (Tr. 529-30).

The ALJ found PA Miller's opinion "not persuasive, primarily because

it is inconsistent with the record as a whole and lacks overall support."  (Tr.

16).  The ALJ first discussed the inconsistency of the opinion given the lack

of evidence of significant treatment, noting that claimants with disabling back

pain "generally" take medications with increasing dosage, whereas

Nottingham testified that he was not taking any pain medication or receiving

pain injections.  The ALJ also suggested that Nottingham would be prescribed

"significant physical or occupational therapy" if his impairment was

disabling, and that PA Miller had only prescribed Nottingham an anti-

inflammatory medication.  Finally, the ALJ found that "Mr. Miller's

treatment records do not indicate limitations consistent with those in his

source statement," and that objective medical tests, including an MRI and x-

rays, noted no abnormal signal intensity, age appropriate degenerative disc

disease and spondylosis, and no significant neurologic involvement.  (Tr. 16).

- 9 -

Nottingham argues that the ALJ dismissed PA Miller's opinion without adequate explanation, and more specifically, that she improperly substituted her own opinion regarding appropriate treatments for Nottingham's impairments.  In response, the Commissioner suggests that the ALJ properly assessed the supportability and consistency of PA Miller's opinion with his and other providers' medical records, and that her discussion of other common treatment options was intended to highlight the conservative nature of Nottingham's treatment.

The Court concludes that the ALJ properly discounted PA Miller's opinion and adequately explained her reasons for doing so.  First, substantial evidence supports the ALJ's conclusion that Nottingham's conservative treatment is inconsistent with PA Miller's opinion.  *See Perkins v. Astrue*, 648 F.3d 892, 898–99 (8th Cir. 2011) (holding that an ALJ properly discounted a treating physician's opinion in part because the treating physician's opinion was inconsistent with the conservative nature of the treatment rendered). Nottingham claims that PA Miller's opinion is consistent with the record because he prescribed "exactly the medical treatment advised" by Mark Drymalski, M.D., an orthopedic specialist who treated Nottingham in February 2019.  ECF 12 at pg. 8-9.  In fact, the records show that Dr. Drymalski recommended long-term core strengthening exercises; provided

- 10 -

Nottingham a prescription for physical therapy; suggested pain injections at a

pain management clinic; and recommended nine different over-the-counter or

prescription pain medications to try.  (Tr. 520).  The ALJ correctly noted that

PA Miller did not recommend any of these conservative treatments—aside for

one prescription which Nottingham admittedly does not take—and

appropriately pointed out that the absence of even minimal treatment

recommendations weighed against his opinion that Nottingham is essentially

disabled:  "[W]hile ALJs may not draw their own inferences from medical

reports, they may consider the extent to which the relevant medical evidence

does not support the conclusions in the report and weigh it accordingly."

*Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *7

(E.D. Mo. Mar. 25, 2021) (citing 20 C.F.R. § 404.1527(c)(4)).[4]

Substantial evidence also supports the ALJ's conclusion that other

medical evidence in the record, including PA Miller's own treatment notes,

do not support his medical opinion.  The ALJ thoroughly discussed

Nottingham's medical records, which reflect little more than generalized

tenderness and mild to moderate pain on examination, with minimal to no

---

[4] Nottingham insists that the ALJ's discussion of common pain symptoms and alternative treatment options constituted impermissible lay interpretation of the evidence, but in context with the rest of the opinion, I agree with the Commissioner that the more reasonable interpretation is that the challenged statements were intended only to highlight the absence of evidence to support Nottingham's alleged disabilities.

- 11 -

evidence of strength loss, range of motion limitations, or pain-related concentration difficulties.  (Tr. 14-17, 421-33, 479-511, 519-20).  The ALJ also discussed diagnostic test results, including an MRI and x-rays, which revealed only "mild" and "age appropriate" abnormalities to his spine without any significant disc disease.  (Tr. 513-14).  While there is some evidence in the record to support PA Miller's more restrictive opinion, "the mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner . . . does not allow this Court to reverse the decision of the ALJ."  *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (citation omitted).

In sum, the ALJ properly considered the requisite regulatory factors in discounting PA Miller's opinion, and substantial evidence supports her conclusions that PA Miller's opinion is both inconsistent with and not supported by the medical and non-medical record evidence.

### ii.    *The ALJ's RFC Determination*

Nottingham additionally argues that the ALJ erred in assessing his RFC because she failed to provide an adequate narrative rationale for her findings and improperly relied on lay interpretation of the evidence.

It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.  20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.  Some medical evidence must support

the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.  *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise*, 641 F.3d at 927.  "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."  *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

Additionally, when determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints.  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In so doing, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). The ALJ is not mechanically obligated to discuss each of the above factors; however, when rejecting a claimant's subjective complaints, the ALJ must

make an express credibility determination detailing his reasons for

discrediting the testimony, and the ALJ's credibility assessment must be

based on substantial evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th

Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo.

2009).

In her opinion, the ALJ discussed Nottingham's prior work record and

considered the third-party observations of his girlfriend as to his daily activities.

(Tr. 14, 16).  The ALJ also discussed Nottingham's testimony that he could perform

certain everyday tasks like prepare simple meals, care for his son, and wash dishes.

(Tr. 14).  The ability to complete simple activities of daily living does not

necessarily reflect an ability to perform the demands of an everyday job; however,

such admissions may properly be held to undermine assertions of total disability.

*See, e.g., Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016); *Ponder v. Colvin*,

770 F.3d 1190, 1195 (8th Cir. 2014).

The ALJ additionally discussed, in detail, the medication and treatment

Nottingham has received for his impairments, including his treatment history, the

clinical observations of his treating physicians, objective diagnostic test results, and

the prior administrative medical findings as to Nottingham's functional limitations

made by an examining state consultant, Fredric Simowitz, M.D.  (Tr. 14-17).  The

ALJ's partial reliance on the prior administrative medical findings in developing his

RFC is entirely permissible.  20 C.F.R. § 404.1513a(b)(1).

The ALJ also adequately considered Nottingham's testimony concerning the duration, intensity, frequency, and aggravating factors of his symptoms (Tr. 14, 16-17), as well as his complaints of pain as recorded by PA Miller in his treatment records.  (Tr. 15-16, 479-511).  Substantial evidence supports the ALJ's conclusion that Nottingham's statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record.  (Tr. 16.)  Most significantly, the record shows that Nottingham has received fairly negligible treatment for his allegedly disabling pain, consisting of one prescription for a muscle relaxant which he testified that he stopped taking around December 2018 "simply because [he doesn't] like meds."  (Tr. 47, 62, 499).  The Eighth Circuit has long recognized that an ALJ may properly discredit subjective complaints of disabling pain where the claimant receives only minimal, conservative treatment. *See, e.g. Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding the ALJ had good cause to discredit claimant's complaints of disabling pain due to physicians prescribing conservative treatment); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (finding conservative treatment and no surgery consistent with discrediting claimant's testimony).  A reasonable person would find the evidence cited by the ALJ to support her conclusions related to Nottingham's subjective complaints, and so I will affirm her decision here.  *See Anderson v. Astrue*, 696 F.3d 790, 793 (8th

Cir. 2012).

C.  Conclusion

The Court reviews the record "to ensure that an ALJ [did] not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation."  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018).  In this case, the ALJ fairly evaluated the available record evidence, appropriately documented her consideration thereof, and developed an RFC for a reduced range of light work based on the credible limitations of record.  *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).  Simply put, Nottingham has not met his burden of proving that he is disabled, and so the decision of the Commissioner is affirmed.  *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009).

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of September, 2021.

- 16 -